UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL NO.: 3:17CR160(VLB) |
| vs. | : | |
| LEONEL QUIROS | : | AUGUST 21, 2018 |

## MEMORANDUM IN AID OF SENTENCING

### I. INTRODUCTION:

The defendant, Leonel Quiros, hereby submits this memorandum by and through his undersigned counsel, in connection with his sentencing which is scheduled for August 29th, 2018 at 1 p.m.

### II. BACKGROUND AND GUIDELINE APPLICATION:

On February 28th, 2018, Mr. Quiros plead guilty to conspiracy to possess with intent to distribute five hundred (500) grams or more of a mixture and substance containing a detectable amount of cocaine, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(B)(ii), and 846. The penalty provision relating to the plea of guilty calls for a maximum penalty of forty (40) years imprisonment, a mandatory minimum penalty of five (5) years imprisonment and supervised release of at least four (4) years. As agreed to in Mr. Quiros' plea agreement dated February

15th, 2018, the defendant and the Government agreed that Mr. Quiros' criminal history placed him in category 1. That determination was confirmed in the pre-sentence investigation and report. The defendant and the Government agreed that Quiros' base offense level, pursuant to U.S.S.G. § 2D 1.1(c)(8), is a level twenty-four (24). The pre-sentence report, however, determined that his base offense level is a twenty-six (26). The defendant has field an objection to that finding. The defendant filed a three-page objection with United States probation officer Xenia Gray on April 17th, 2018. Most of which had been resolved.[1] The objection to the quantity determination contained in paragraph 1 has not been resolved. The defendant, through counsel, relies on that objection, specifically paragraph 1, to support his claim that the offense level should be, as noted in the plea agreement between Quiros and the Government, to be a level 24.

As part of the plea agreement, the defendant and the Government agreed that defendant Quiros played a "minor role" in the offense conduct and agreed to deduct three levels from the base offense level for his role in the offense. In addition, the plea agreement also determined that a three-level reduction would also be appropriate for Quiros' Acceptance of Responsibility. Deducting the six-

---

[1] A copy of the defendant's objections is annexed here to as Exhibit 1.

level total deduction from a base offense level resulted in a total offense level of eighteen (18), with a criminal history of one. In addition, as part of the plea agreement, Mr. Quiros was allowed to claim eligibility for "safety valve" relief pursuant to 18 U.S.C. § 3553(f) and U.S.S.G. § 5c 1.2. If found eligible for safety valve relief, Mr. Quiros would no longer be bound by a five (5) year mandatory minimum and could also receive an additional two-level reduction in his guideline level. Mr. Quiros' fulfilled the requirements of both 18 U.S.C. § 3553(f) and U.S.S.G. § 5c 1.2, and the Government has agreed that Mr. Quiros is eligible for the safety valve relief. If the Court follows the Governments lead and does grant Mr. Quiros the safety valve release, it would yield a recommended sentencing guideline range of twenty-one (21) to twenty-seven (27) months. The United States Probation department did not object to the role in the offense reduction nor the Acceptance of Responsibility reduction. At paragraph 27 of the report, it indicates that the "probation office does not have enough information to determine if Mr. Quiros has met the requirements of the safety valve. Therefore, a two-level reduction is not recommended at this time." The completion of the safety valve proffer and determination by the Government was

made after the date of this presentence report, and counsel is unaware of any reason why the probation office would now object to the safety valve reduction.

The defendant urges the court to accept the terms and conditions set forth in the plea agreement letter, and although there is a slight dispute over the guideline range, between the parties and probations the requests that the court follow the terms of the plea agreement pursuant to the *United States v. Fernandez, 877 F.2 1138 (2d. Cir. 1989)* and find a recommended sentencing range of twenty one (21) to twenty seven (27) months.

III. <u>SUPPORT COURT:</u>

Undersigned counsel has spoken with Mr. Quiros and with Mr. Quiros' probation officer, Otto Rothi concerning the Support Court. Mr. Rothi had originally urged Mr. Quiros to seek admission to the Support Court. After speaking with Mr. Quiros and Mr. Rothi on a number of occasions, Mr. Quiros applied for entry into the Support Court. On April 17th, 2018, the court granted Mr. Quiros' motion to attend support court. The court ordered Mr. Quiros to submit a formal application to participate in the support court and to have a referral package completed on his behalf. Both the application and the referral package were completed and delivered to the support court. On May 1st, 2018

the court granted the defendant's motion to continue his sentencing until after a determination was made on his eligibility to participate in the support court.

On August 8th, 2018, undersigned counsel received an email from United States Probation Officer Otto Rothi that Mr. Quiros' application to the support court was denied. Mr. Rothi provided no reason and directed counsel to contact United States Probation Officer Kevin DelBiondo if counsel was interested in learning why the application was denied. On August 9th, 2018 undersigned counsel had a telephone conversation with Mr. DelBiondo concerning Mr. Quiros and the denial of his support court application. In summary, Mr. Quiros' application was denied not because of anything that Mr. Quiros has done during the determination period, or that he somehow indicated a reason why he should not participate in the support court, but rather it was denied because of his limited substance abuse issues, which relate to his use of marijuana and his apparent ability to remain clean for long periods of time; the fact that he has been and is employed; the fact that he has a high school degree; and the fact that he comes from a close and loving family that provided for his needs growing up. In other words, according to Mr. DelBiondo, Mr. Quiros' history and

fact pattern did not meet the criteria for entrance into the Support Court program.

As a result of that determination, Mr. Quiros' is now ready to proceed to sentencing.

**STANDARD OF REVIEW**

The standard of review for sentencing is one of "reasonableness." *U.S. v. Cossey, 632 F.3d 82, 86 (2d Cir. 2010) (Citing U.S. v. Booker, 543 U.S. 220, 260-62 (2005)*. To impose a procedurally reasonable sentence, a district court must (1) normally determine the applicable Guideline range, (2) consider the Guidelines along with other factors under section 3553 (a), and (3) determine whether to impose a Guideline sentence or non Guideline sentence. Id. (Citing *U.S. v. Villafuerte, 502 F.3 204, 205-07 (2d Cir. 2007)*).

As the court is aware, following the Supreme Court's decision in *U.S. v. Booker, 543 U.S. 20 (2005)*, the guidelines are now advisory. "The guidelines are *not* only not mandatory on sentencing court; they are also not to be *presumed* reasonable." *Nelson v. United States, 555 U.S._(2009); 129 S.Ct. 890, 891 (2009)(emphasis added)*. While "a district court should began all sentencing proceedings by correctly calculating the applicable guideline range," the

guidelines are merely the "starting point and the initial bench mark [,]...not the only consideration." *Gall v. United States, 552 U.S. 38, 49 (2007).* Rather, the court must "consider all of the section 3553(a) factors" and "must make an individualized assessment based on the facts presented." Id. at 49-50. In imposing a sentence, that factors in 18 U.S.C. § 3553(a) must be considered. *Kimbrough v. United States, 552 U.S. 85, 101 (2007).* Those factors are:

(1) The nature and circumstances of the offense and the history and characteristics of the defendant;

(2) The need for the sentence to be imposed:

   (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

   (B) to afford adequate deterrence to criminal conduct;

   (C) to protect the public from further crimes of the defendant; and

   (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3) the kinds of sentences available;

(4) the advisory guideline range;

(5) any pertinent policy statements issued by the Sentencing Commission;

(6) the need to avoid unwarranted sentence disparities; and

(7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a). Ultimately, the court must "impose a sentence sufficient, but not greater than necessary, to comply with the purposes" of sentencing. 18 U.S.C. § 3553(a).

"[D]istrict courts enjoy considerable discretion in identifying the grounds it can justify a non-Guideline sentence." *U.S. v. Jones, 531 F.3 163, 172 (2d Cir. 2008).* The court may, for instance, "varying from Guideline ranges based solely on policy considerations, including disagreements with the Guidelines." *Kimbrough v. United States, 552 U.S. 85, 101 (2007)* (internal modifications omitted). In exercising this discretion, the district court cannot presume that the advisory Guideline range is reasonable. See *Rita v. United States, 551 U.S. 338, 351 (2007).* In fact, even on appellate review, there is no presumption of reasonableness for the guideline range. See *U.S. v. Fernandez, 443 F.3 19, 28 (2d Cir. 2006).* Accordingly, "the amount by which a sentence deviates from the applicable guideline range is not the measure of how 'reasonable' a sentence is." *U.S. v. Dorvee, 616 F.3 174, 184 (2d Cir. 2010) (Citing Gal 552 US at 46-47);*

See also *United States v. Ovid, No.09-CR-216JG, 2010 WL 3940724, at \*1 (E.D.N.Y October 1, 2010)*("indeed, in some cases a fair sentence can drift quite far away from the advisory range, which is, after all, but one of eight factors a sentencing judge must consider."). In short, *Booker* and later *Kimbrough* and *Gal* have largely restored the district court's traditional role in sentencing, namely, to evaluate each defendant on an individual basis, rather than to mechanically apply an abstract set of rules. See *Jones, 531 F.3 at 182; United States v. Relgado, 518 F.3 143, 146 (2d Cir. 2008) (per curiam)*. The court must "consider all of the section 3553(a) factors" and "must make an individualized assessment based on the facts presented." Gal, 552 U.S. at 46-47.

### IV. ARGUMENT:

As agreed to by the Government, Leonel Quiros had a minor role in this cocaine conspiracy. He primarily was used by his brother to arrange an address where his brother could receive his cocaine deliveries. Other than arranging the location, and not to minimize what he did, he had no further role in the packaging, distribution, or sale of the cocaine. Nor did he share in his brother's profits. As the court is aware, Quiros' brother, who has also plead guilty, was very heavily involved in cocaine trafficking and had a lavish lifestyle with large

amounts of cash, lavish spending, high end cars and jewelry. It does not appear that Mr. Leonel Quiros was part of that lifestyle or involvement, but rather did some relatively stupid acts to aid his brother. Unlike his brother, Mr. Quiros' has been actively at legitimate jobs, working in the restaurant industry primarily as a chef. That is not an easy lifestyle as it is time consuming and you have to not only perform but perform to a high standard because customers are judging every meal that is produced. It is a decision that Leonel made to enter into that industry, and he very much enjoys it and will continue in that profession. It is stressful, it is long hours and difficult task, but the reward of having customers acknowledge a good meal is very important to Mr. Quiros. He could have chosen to abandon that lifestyle and become much more involved in his brother's distribution ring, but he chose not to. It would indicate that Mr. Quiros does have significant potential to straighten out the issues that he has in his life and to continue as both a productive and employable law-abiding citizen.

     It is difficult to reconcile his decisions to assist his brother given the family background as set forth in paragraph forty (40) of the presentence report. He has always been close with his parents, following them to Florida when they retired and moved there. Even then, he made a foolish mistake of leaving Florida

and following his brother to Puerto Rico, where he did not find the employment promised, what employment he had failed, and he turned to the sale of marijuana to support himself. When the opportunity arose to return to Florida and to work a legitimate job, he did that and was employed in Kissimmee area for an extended period of time. Unfortunately, when his brother called and asked him to come to Connecticut to assist him in the marijuana business, Mr. Quiros' made another bad decision and returned to Connecticut. They jointly worked in a marijuana business as reflected in the pre-sentence report, and later his brother branched out into cocaine. Mr. Leonel Quiros did not follow him into the cocaine business, but did remain in the marijuana business, but also did work legitimate employment. It wasn't until his brother called again to ask him to assist him in the findings of locations that Mr. Quiros again made a stupid decision to assist his brother. What makes it even more unusual is that the two brothers are not necessarily close and are frequently at odds with each other. Why he continued to make these poor decisions has lead him to this point in his life where he will be incarcerated as a result of his guilty plea and conviction. [2]

---

[2] A letter from his employer is annexed hereto as Exhibit 2

In looking at his employment record in paragraphs 58-63 of the pre-sentence report, it is clear that he can be a productive person in our society.[3] He has to make decisions regarding his life decisions. In the pre-sentence report, it is recommended that the court take part in the Moral Reconation therapy program provided by the United States probation office. Probation believes that would be "a valuable program to assist Mr. Quiros in evaluating his decision-making skills." See pre-sentence report at paragraph 88. It is likely that that program would very much assist Mr. Quiros in his future decisions, and we would ask the court to make that a condition of his supervised release.

V. **VOLUNTARY SURRENDER:**

Mr. Quiros has been on a release status since August 1st of 2017. He has spent more than one year on a release status waiting for his case to be resolved. He fully realizes he will face a period of incarceration at his sentencing. He is requesting pursuant to 18 U.S.C. 3143(a) that he be allowed to continue to remain on release pending notification by either the court or the United States Marshall served of the location where he is to commence his sentence. Under section 3143 the court must find by "clear and convincing evidence that the

person is not likely to flee or to pose a danger to the safety of any other person or the community". The court can, in its discretion after making such a finding, allow Mr. Quiros to voluntary surrender, as the "execution" of his sentence would not occur until he is actually beginning the sentence imposed. If he is allowed to voluntarily surrender, the sentence imposed will take effect on the day that he surrenders himself to the institution. He has shown during the more than one year on release that he is not likely to flee, and there has never been a argument that he is a danger to the safety of any other person.

18 U.S.C. § 3143(a) authorizes the release of a defendant where there is clear and convincing evidence if the person is not likely to flee or pose a danger to the community. Subsection 3141(b), which has a higher standard in allowing an individual to remain unreleased applies to an individual who has "filed an appeal". Mr. Quiros has not filed an appeal, and will not, in all likelihood file an appeal. If an appeal is filed, then of course his release status would be subject to another determination for the court. The intent of the statute is not to allow people to remain free on appeal for substantial period of time while the appeal is processed, prepared and argued. We are not asking for his release to be indefinite as it would be with an appeal. We are simply asking the court to allow

him to self-surrender within a relatively short period of time to the prison designated by the US Marshal. It is the defendant's position that 18 section 3143(a) is applicable to this case. It is also important to note that when determining placement for an incoming individual, the bureau of prisons does look at various factors in determining its security level. The ability to self-surrender has a substantial impact in that determination and can mean the difference between being sentenced to a camp or a minimum-security facility.

Given that Mr. Quiros was released from detention and has complied with all conditions and recommendations made by probation while on that pre-trial detention, it is respectfully requested that Mr. Quiros be allowed to self-surrender.

## LOCATION:

It is respectfully requested that the court recommend that Mr. Quiros be sentenced to as close to Connecticut as possible. It is also requested that the court recommend that Mr. Quiros serves his sentence at either the Danbury Correctional Facility in Danbury, Connecticut or the Fort Dix, New Jersey facility.

THE DEFENDANT, LEONEL QUIROS

BY: _____
David A. Moraghan, Esq.
Smith, Keefe, Moraghan & Waterfall
257 Main Street, Fl. 2-2
P.O. Box 1146
Torrington, CT 06790
Phone: (860) 482-7651
Fax: (860) 482-7845
e-mail:  dam@skmwlaw.com
Federal Bar #: CT00054

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | CRIMINAL NO.: 3:17CR160(VLB) |
| vs. | : | |
| **LEONEL QUIROS** | : | AUGUST 21, 2018 |

<u>CERTIFICATION OF SERVICE</u>

I hereby certify that a copy of the foregoing was made this 21st day of August 2018 to:

Honorable Vanessa L. Bryant
Abraham Ribicoff Federal Building
United States Courthouse
450 Main Street - Annex 135
Hartford, Connecticut 06103

US Probation Officer Xenia Gray
United States District Court
450 Main Street
Hartford, CT 06103

BY: _____
David A. Moraghan, Esq.
Smith, Keefe, Moraghan & Waterfall
257 Main Street, Fl. 2-2
P.O. Box 1146
Torrington, CT 06790
Phone: (860) 482-7651
Fax: (860) 482-7845
e-mail: dam@skmwlaw.com
Federal Bar #: CT00054

# *SMITH, KEEFE, MORAGHAN & WATERFALL, LLC*

Counselors At Law

David A. Moraghan  
A. Thomas Waterfall

Jess H. Smith  
*1932-2008*  
Joseph F. Keefe  
*1942-2003*

April 17, 2018

Xenia Gray  
U.S.P.O  
450 Main Street, Room 735  
Hartford, CT 06103

**Re: Leonel Quiros; Presentence Report**

Dear Ms. Gray,

    I have reviewed the draft Presentence Report with Mr. Quiros. We have the following comments and/or objections:

1. With respect to Paragraph 7, we object to your calculation of the base offense level. We object to the calculation for two reasons: you have increased the guideline range under USSG §2D1.1(c)(7) and raised his base offense level from 24 to 26. This is based upon your belief that Mr. Quiros was involved in receiving more than two kilograms of cocaine. I would ask you to again look at the Plea Agreement, which was drafted by the United States Attorney's Office. They are in the best position to make a determination as to quantity. Their determination, which we agreed to, was more than five hundred grams and less than two kilograms. Further, later in your report at Paragraph 15, you note that a package was found to contain <u>approximately </u>two kilograms of cocaine. Also, in the report, you rely on information given to you by the Government that, in speaking to his brother, he said, "If we get hit with a bar, we're going down. . ." Agents believe "bar" to be reference to one kilogram cocaine (See Paragraph 18).
2. Mr. Quiros had little significant involvement in his brother's drug trafficking organization. He assisted him by obtaining a location where a delivery by the United State Post Office could be made. He certainly knew that it was going to involve cocaine and he knew that it was not a small amount of cocaine, but he believed that his brother was talking about receiving approximately one kilogram as opposed to two kilograms. To further illustrate his lack of involvement, the Government agreed to the three-level reduction for a minor role in the organization.
3. There is no dispute that he did assist his brother on two occasions in obtaining a location where cocaine could purportedly be delivered. He was

# SMITH, KEEFE, MORAGHAN & WATERFALL, LLC

Counselors At Law

David A. Moraghan
A. Thomas Waterfall

Jess H. Smith
*1932-2008*
Joseph F. Keefe
*1942-2003*

- Page 2 -

not privy to what was in the shipments and again I would ask that you reconsider your calculation and adopt the calculation that the Government proposed in the Plea Agreement which I think best addressed the quantity issue.

4. With respect to the firearm, it was never in any way employed by Mr. Quiros in any drug activity. He had acquired that gun a short time prior to the arrest taking place. It had nothing to do with the drug trafficking activity but was a result of a dispute he was having with a neighbor. When the agents conducted the arrest of Mr. Quiros, he informed them that he had the gun, which was locked and unloaded inside a safe. It was not illegal for him to possess that gun and it was not used in any way, shape or form in the drug trafficking activity. The Government has agreed that the gun issue does not render him illegible for the safety valve reduction and I would ask that you delete that two-level increase from Paragraph 7 as well.
5. With respect to the paragraphs concerning offense conduct, I would request that you identify both Quiros brothers by their first and last name. It is somewhat confusing as to which Quiros is being discussed. For instance, in Paragraph 15, you specifically refer to Orlando Qurios, while in Paragraph 13 you refer to Mr. Quiros. I know which Mr. Qurios you are referring to, but I think it would be advantageous and clearer for the Court if you identify the Quiros brothers by their first and last names in each paragraph. The same is true in Paragraphs 14, 15, 16 and 20. Further, in Paragraph 19, I would ask that you use the same language as set forth in Paragraph 15, that the package was found to contain "approximately" two kilograms of cocaine.
6. As set forth previously, we do object to your offense level computation as set forth in Paragraphs 26 and 27 but will not reiterate the reasons again.
7. In Paragraph 44, you note that Quiros returned to Connecticut to run his brother's drug sale business temporarily. That was at a time when both Qurios brothers were involved in the sale of marijuana. I would ask that you clarify in Paragraph 44 and delete "drug" and insert "marijuana sales business temporarily." I would ask in Paragraph 46 that you also delete "drug" and include "marijuana sales" in both the second sentence and in the last sentence of that paragraph.

Telephone: (860) 482-7651  FAX: (860) 482-7845
257 Main Street, FL.2-2, P.O. Box 1146, Torrington, CT 06790
e-mail: dam@skmwlaw.com; atw@skmwlaw.com

# SMITH, KEEFE, MORAGHAN & WATERFALL, LLC

Counselors At Law

David A. Moraghan  
A. Thomas Waterfall

Jess H. Smith  
*1932-2008*  
Joseph F. Keefe  
*1942-2003*

- Page 3 -

8. Finally, while released on bond, Mr. Quiros is attending a drug treatment program at the request of his Probation Officer Otto Rothi. It is my understanding that he is halfway through that program. I would ask that you confirm that with Mr. Otto Rothi and, if you believe it appropriate, to include that information in the report.

Very Truly Yours,



David A. Moraghan  
DAM/slb

Telephone: (860) 482-7651  FAX: (860) 482-7845  
257 Main Street, FL.2-2, P.O. Box 1146, Torrington, CT 06790  
e-mail: dam@skmwlaw.com; atw@skmwlaw.com



75 Center Street · Southington, CT 06489
(860) 426.1303 · SeventyFiveCenter@gmail.com
www.75Center@gmail.com

Mon 20AUG2018

To whom it may concern:

My name is Mary Forgues. I reside in Naugatuck CT, operate 75 Center in Southington CT.

The purpose of this statement is to reiterate the character and manner of Leonel Quiros.

I have known Mr. Quiros since he began employment with our company as a part time line cook on Friday March 16, 2018. During his employment with 75 Center, he has shown up to work at his scheduled time or earlier every single scheduled shift. He has never called out and is willing to pick up other shifts when we are short staffed. Mr. Quiros has not caused any issues with our staff and has been a team player this is colleagues enjoy engaging with. Our establishment was put in a tough spot when our Sous Chef relocated his employment. Without hesitation or our expectations, Mr. Quiros essentially 'saved the day' by stepping up into a full time position of assisting our Executive Chef/Kitchen Manager with all tasks required.

Mr. Quiros has always been kind, encouraging, honest, courteous, responsible and dependable.

Concerns or additional requests, please contact me at 860-426-1303.

Thank you,

*Mary Forgues*
Mary Forgues